UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
COLLEEN MILLER,                     )
                                    )
            Plaintiff,              )     Civil Action No. 08-1613 (ESH)
                                    )
      v.                            )
                                    )
TOYOTA MOTOR CORPORATION, *et al.*  )
                                    )
            Defendants.             )
_____)

## MEMORANDUM OPINION

Plaintiff Colleen Miller has sued Toyota Motor Corp. ("TMC") and Thrifty Rent-A-Car Service, Inc. ("Thrifty") for damages resulting from injuries she suffered during an accident that occurred in South Africa involving a vehicle rented from Thrifty's licensee and made by TMC. Before the Court are defendants' motions to dismiss. For the reasons set forth below, the Court will dismiss TMC for lack of personal jurisdiction and transfer plaintiff's claims against Thrifty to the Middle District of Florida on the grounds of *forum non conveniens*.

## BACKGROUND

### I. FACTS

Plaintiff Colleen Miller is a citizen of Ohio. (Compl. ¶ 1.) On October 3, 2005, plaintiff was injured in an auto accident near Uniondale, South Africa when the brake on the vehicle in which she was traveling allegedly malfunctioned, causing the vehicle to swerve, spin uncontrollably, flip off the roadway, and ultimately, strike a pole ("the accident"). (*Id.* ¶¶ 8, 11-14.) Plaintiff was traveling in a Toyota Condor sport utility vehicle ("the SUV") which had been rented from a vehicle rental facility operated by Safy Trust ("Safy") per a licensing agreement

1

with Thrifty Rent-A-Car Service, Inc. ("Thrifty").  (*Id.* ¶¶ 8, 10.)  Also in the SUV at the time of the accident were plaintiff's mother, Dorothy Thomson; plaintiff's son, Jerame Miller, and his wife, Rita Miller; and Jerame's daughters (and plaintiff's granddaughters), Madison and Cori Miller (collectively, "the other SUV passengers").

Defendant Thrifty is an Oklahoma corporation with its principal place of business in Tulsa, Oklahoma.  (Compl. ¶ 3.)  Thrifty operates vehicle rental facilities in the District of Columbia.  (Thrifty's Mem. of P. & A. in Supp. of Mot. to Dismiss ["Thrifty's Mem."] at 9.)  On October 1, 2003, Thrifty entered a licensing agreement with Safy, a South African company.  (*See id.*, Ex. 1 (International Master License Agreement).)  Per the licensing agreement, Safy operates a vehicle rental facility at the airport in Port Elizabeth, South Africa.  (*Id.*; *see also* Thrifty's Mem. at 1, 9.)  Safy is not a defendant in this action.  (Compl. ¶ 36.)

Defendant Toyota Motor Corp. Worldwide ("TMC") is a Japanese corporation with its principal place of business in Japan.  (Compl. ¶ 2.)  TMC "designs, manufactures, assembles and developmentally tests" various Toyota vehicles.  (TMC's Mem. of P. & A. in Supp. of Mot. to Dismiss ["TMC's Mem."], Ex. 1 (Kojiro Tanaka Aff., Feb. 27, 2009) ["Tanaka Aff."] ¶ 3; *see generally* TMC's Mem. at 1-2, 8, 11-12.)  The Toyota Condor is not designed or manufactured for the United States market.  (Tanaka Aff. ¶ 31.)  TMC does not import Toyota vehicles into the United States, nor does it market or sell Toyota vehicles here.  (*Id.* ¶¶ 5-6.)  Toyota Motor Sales, U.S.A. ("TMS"), a subsidiary of TMC that is incorporated in California, performs these functions.  (*Id.* ¶ 6.)  TMS is the exclusive importer of Toyota vehicles in the United States, and a distributor of vehicles in the District of Columbia.  (TMC's Mem., Ex. 2 (Jerry Koyanagi Aff., Feb. 18, 2009) ["Koyanagi Aff."] ¶ 3.)  Toyota Motor North America, Inc. ("TMA") is the

holding company for TMS. (TMC's Mem., Ex. 3 (Jeffrey Roman Aff., Feb. 11, 2009) ["Roman Aff."] ¶ 3.) TMA, also incorporated in California, directs corporate communications and advertising, investor and media relations, government and regulatory affairs, market research, and philanthropy. (*Id.* ¶ 4.)

TMC is not licensed to do business in the District of Columbia. (Tanaka Aff. ¶ 14.) It does not own or lease real estate in the District of Columbia and does not maintain a sales force or any other agents or representatives here. (*Id.* ¶¶ 8, 13.) It does not pay taxes to the District of Columbia. (*Id.* ¶ 15.) None of TMC's designing or manufacturing takes place in the District of Columbia. (*Id.* ¶ 17.) TMC does not target marketing at District of Columbia residents. (*See id.* ¶¶ 6, 10, 11, 16.) It does not ship any vehicles for the purposes of sale directly into the District of Columbia. (*Id.* ¶ 9.)

## II. PROCEDURAL HISTORY

The October 3, 2005 accident has generated five lawsuits by plaintiff and the other SUV passengers. On October 9, 2006, plaintiff and the Estate of Dorothy Thomson (plaintiff's mother, who died from complications relating to injuries she sustained in the accident) filed the first suit against TMC and Thrifty in the U.S. District Court for the Northern District of Ohio. *Estate of Dorothy Thomson v. Toyota Motor Corp. Worldwide* (hereinafter "*Estate of Dorothy Thomson I*"), No. 06-2431, 2007 WL 1795271, at *1 (N.D. Ohio June 19, 2007). On June 19, 2007, the U.S. District Court for the Northern District of Ohio granted TMC's motion to dismiss for lack of personal jurisdiction and *sua sponte* dismissed the claims against Thrifty on the grounds of *forum non conveniens*. *Id.* at *2, *3. The Court of Appeals for the Sixth Circuit affirmed these dismissals. *See* 545 F.3d 357, 360 (6th Cir. 2008).

On October 1, 2007, plaintiff's son and daughter-in-law, Jerame and Rita Miller, and plaintiff's granddaughter, Cori Miller, filed suit to recover damages for their own injuries and for the death of Madison Miller, plaintiff's other granddaughter who died when the helicopter evacuating her from the scene of the accident crashed into a mountain. *Estate of Madison Miller v. Toyota Motor Corp.* (hereinafter "*Estate of Madison Miller*"), No. 07-1358, 2008 WL 516725, at *2 (M.D. Fla. Feb. 22, 2008), *amended by* 2008 WL 4525058 (M.D. Fla. Oct. 3, 2008). After granting limited jurisdictional discovery, the U.S. District Court for the Middle District of Florida dismissed plaintiff's claims against TMC for lack of personal jurisdiction. 2008 WL 516725, at *6. However, it denied Thrifty's motion to dismiss for lack of personal jurisdiction and *forum non conveniens*. *Estate of Madison Miller*, No. 07-1358, 2007 WL 4482589, at *11 (M.D. Fla. Dec. 18, 2007). The claims against Thrifty are scheduled for trial in August 2009. (Pl.'s Opp'n to Def. Thrifty-Rent-a-Car Service, Inc.'s Mot. to Dismiss ["Pl.'s Opp'n to Thrifty's Mot."] at 2.)

On October 2, 2007, plaintiff's husband, Michael Miller, filed suit in Ohio state court, and TMC and Thrifty subsequently removed the case to the U.S. District Court for the Northern District of Ohio and filed motions to dismiss. *Miller v. Toyota Motor Corp.* (hereinafter "*Michael Miller*"), 593 F. Supp. 2d 1254, 1256 (M.D. Fla. 2008). Rather than dismiss Michael Miller's claims, the Northern District of Ohio transferred his case to the U.S. District Court for the Middle District of Florida. *Id.* On October 10, 2008, Michael Miller and TMC stipulated to the dismissal of all his claims against TMC. (TMC's Mem. at 4.) His claims against Thrifty have been consolidated for trial with *Estate of Madison Miller*. (Pl.'s Opp'n to Thrifty's Mot. at 2.)

On September 19, 2008, Dorothy Thomson's estate filed suit in the U.S. District Court for the District of Maryland. *Estate of Dorothy Thomson v. Toyota Motor Corp. Worldwide* (hereinafter "*Estate of Dorothy Thomson II*"), No. 08-2467 (D. Md. filed Sep. 19, 2008). TMC and Thrifty have filed motions to dismiss which are currently pending before that court.

On September 18, 2008, plaintiff brought suit in this jurisdiction, alleging that TMC negligently failed to use reasonable care in designing and constructing a safe vehicle and brake system. (Compl. ¶¶ 14, 17, 18.) Plaintiff also alleges that Thrifty negligently failed to use reasonable care in selecting and providing safe vehicles for its customers. (*Id.* ¶¶ 21, 22.) Plaintiff further alleges strict liability and breach of both express and implied warranties as to both defendants. (*Id.* ¶¶ 24-35.) Plaintiff requests damages for her injuries, physical and mental pain and suffering, medical expenses, and loss of earnings. (*Id.* ¶ 36.)

TMC has moved to dismiss the complaint for lack of personal jurisdiction, claiming that it has insufficient contacts with the District of Columbia. (TMC's Mem. at 6-10; *see generally* Tanaka Aff.) TMC further claims that neither TMS nor TMA is an alter ego of TMC, so those corporations' activities in the District of Columbia cannot subject TMC to suit here. (TMC's Mem. at 12-16; *see generally* Tanaka Aff., Koyanagi Aff., & Roman Aff.) TMC has also moved to dismiss the complaint for improper venue and insufficient service of process. (TMC's Mem. at 1.)

Thrifty has moved to dismiss the complaint for inconvenient venue. (Thrifty's Mem. at 3.) Specifically, Thrifty claims that South Africa is the proper venue for this suit. (*Id.* at 8.) Thrifty also has moved to dismiss the complaint for failure to state a claim upon which relief can be granted (*id.* at 1), claiming that the decision by the Northern District of Ohio to dismiss *Estate*

5

*of Dorothy Thomson I* based on *forum non conveniens*, 2007 WL 1795271, at *2-*3, *aff'd*, 545 F.3d at 360, bars the current action based on the doctrines of res judicata and collateral estoppel. (Thrifty's Mem. at 1, 5.) Finally, Thrifty has also moved to dismiss for lack of personal jurisdiction. (*Id.* at 1.)

For the following reasons, this Court will grant TMC's motion to dismiss for lack of personal jurisdiction and will transfer plaintiff's claims against Thrifty to the Middle District of Florida.

**ANALYSIS**

**I.    TMC**

A foreign corporate defendant may be subject to personal jurisdiction pursuant to either the District of Columbia's long-arm statute, D.C. Code § 13-423(a), or its provision for service of foreign corporations, D.C. Code § 13-334(a). *Sunlite, Inc. v. BfG Bank AG*, 849 F. Supp. 74, 75-76 (D.D.C. 1994). Plaintiff has acknowledged that the facts of her case do not give rise to specific jurisdiction over TMC, provided for in § 13-423(a)(1) (Pl.'s Opp'n to TMC's Mot. at 3), so this Court only considers whether TMC is subject to general personal jurisdiction, provided for in § 13-334(a). (*See also* TMC's Mem. at 5-6.) That section provides in relevant part:

> In an action against a foreign corporation doing business in the District, process may be served on the agent of the corporation or person conducting its business, or, when he is absent and can not be found, by leaving a copy at the principal place of business in the District, or where there is no such place of business, by leaving a copy at the place of business or residence of the agent in the District, and that service is effectual to bring the corporation before the court.

D.C. Code § 13-334(a).

"Although section 13-334(a) expressly addresses service of process, the D.C. Court of Appeals has held that section 13-334(a) also grants general personal jurisdiction over 'a foreign

6

corporation which carries on a consistent pattern of regular business activity' within the District." *FC Inv. Group LC v. IFX Markets Ltd.*, 529 F.3d 1087, 1092 (D.C. Cir. 2008) (quoting *AMAF Int'l Corp. v. Ralston Purina Co.*, 428 A.2d 849, 850 (D.C. 1981)). "D.C. Code § 13-334(a) 'permits courts to exercise general jurisdiction over a foreign corporation as to claims not arising from the corporation's conduct in the District of Columbia if the corporation is "doing business" in the District.'" *Id.* at 1091 (quoting *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509 (D.C. Cir. 2002) (internal quotation omitted)). "'The reach of "doing business" jurisdiction under § 13-334(a) is co-extensive with the reach of constitutional due process.'" *Id.* at 1092 (quoting *Gorman*, 293 F.3d at 510). The Due Process Clause makes "general jurisdiction . . . permissible if the defendant's business contacts with the forum are 'continuous and systematic.'" *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)).

TMC's pleadings and affidavits assert that it does little, if any, business in the District of Columbia (TMC's Mem. at 8, 11-12; *see generally* Tanaka Aff.), and certainly none that could be described as "continuous and systematic." Plaintiff claims that TMS and TMA are closely related to and seemingly controlled by TMC, and that their activities in the District of Columbia are sufficient to hale TMC into this Court. (Pl.'s Opp'n to Def. Toyota Motor Corp.'s Mot. to Dismiss ["Pl.'s Opp'n to TMC's Mot."] at 2-6.) Plaintiff also claims that TMC's activity in the United States, generally, and its global presence should subject it to personal jurisdiction in the District of Columbia. (*Id.* at 1-4, 6.) Courts in both the Ohio and Florida actions filed by plaintiff and the other SUV passengers have already considered and rejected these very arguments, *see Estate of Dorothy Thomson I*, 2007 WL 1795271, at *1-*2, even when they were

supported by the same exhibits that plaintiff has submitted here. *See Estate of Madison Miller*, 2008 WL 516725, at *4-*6.[1] Because Ohio and Florida's requirements for general personal jurisdiction are analogous to those imposed by D.C. Code § 13-334(a), the Court finds the courts' reasoning in those cases to be both instructive and persuasive.

Considering factual claims and jurisdictional theories substantially similar, if not identical, to those made by plaintiff in this case, the district court held in *Estate of Madison Miller* that TMC was not subject to jurisdiction in Florida. 2008 WL 516725, at *6. The court concluded that plaintiffs' claims that TMC was authorized to do business in the State of Florida and that TMC derived one percent of its profits from Florida did not show a "general course of business activity" in Florida. *Id.* at *5. The press releases, offered by plaintiffs as evidence of TMC's national presence and relationships with subsidiaries,[2] were also unavailing because they did not demonstrate any breakdown according to geographical area. *Id.* Furthermore, the court found that any national Toyota brand presence is facilitated not by TMC, but by other domestic

---

[1] The court in *Estate of Dorothy Thomson I* considered the very arguments that plaintiff has made in this case, but did not have the press releases and other corporate documents she now submits as exhibits in support of her opposition to TMC's motion. *Compare* Pls.' Opp'n to Def. Toyota's Mot. to Dismiss and Forum Non Conveniens ["Ohio Pls.' Opp'n to TMC's Mot."], Exs. 1-16, *Estate of Dorothy Thomson I*, No. 06-2431 (N.D. Ohio filed May 14, 2007). The court in *Estate of Madison Miller*, however, considered the same arguments and exhibits that plaintiff has presented here. *See* Pls.' Opp'n to Toyota's Mot. To Dismiss Pursuant to F.R.C.P. 12(b)(2) and/or 12(b)(3), and for Forum Non Conveniens ["Fla. Pls.' Opp'n to TMC's Mot."], Exs. 1-3, 7, 8, *Estate of Madison Miller*, No. 07-1358 (M.D. Fla. filed Dec. 26, 2007). After limited jurisdictional discovery, plaintiffs in *Estate of Madison Miller* presented additional evidence of TMC's activities in Florida and parent-subsidiary relationships, *see* Pls.' Suppl. Mot. to Correct the R. and Assert Personal Jurisdiction over Toyota Motor Corp., *Estate of Madison Miller*, No. 07-1358 (M.D. Fla. filed June 17, 2008), but even this additional evidence did not alter the Florida court's conclusion that it lacked personal jurisdiction over TMC.

[2] Plaintiff in this case has offered these same press releases to show TMC's business activities in the District of Columbia. *Compare* Pl.'s Opp'n to TMC's Mot., Exs. 1 & 4 *with* Fla. Pls.' Opp'n to TMC's Mot., Exs. 2 & 3.

corporations not named as defendants in the litigation. *Id.* at *2. In sum, the evidence failed to show the "substantial and not isolated" activity required by Florida law to establish general jurisdiction. *Id.* at *2-*3 (quoting *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1361 (11th Cir. 2002)).

When assessing plaintiffs' alter ego theory, the court in *Estate of Madison Miller* applied Florida law requiring it to aggregate the "direct and subsidiary-related contacts of a non-resident corporation." *Id.* at *4 (citing *Stubbs*, 447 F.3d at 1361-63). The press releases that plaintiffs offered as evidence of TMC's close connection to TMS appeared to have been prepared for investors and lacked any nuance as to corporate structure. *Id.* at *5. The court was unpersuaded by plaintiffs' claim that TMC and TMS were "essentially the same company because they share some of the same officers" and that sharing of officers demonstrates that TMC controls its subsidiaries, *id.* at *4 (internal quotations omitted), because "[m]ere intermingling of officers and directors does not imply that one corporation acts as the puppet of the other." *Id.* at *5. Accordingly, the court held that TMC's subsidiaries "are sufficiently independent to preclude imputing their contacts to TMC." *Id.* at *6.

For similar reasons, the Ohio district court in *Estate of Dorothy Thomson I* concluded that it lacked personal jurisdiction over TMC because the company "[did] not have any contacts in Ohio" at all, and TMS was not its alter ego. 2007 WL 1795271, at *1-*2. In assessing whether TMS was TMC's alter ego, the court, in accordance with Ohio law, looked to, *inter alia*, financial dependency, nonobservance of corporate formalities, and location of corporate records. *Id.* (citing *Microsys Computing, Inc. v. Dynamic Data Sys, LLC*, No. 05-CV-2205, 2006 WL 2225821, at *6 (N.D. Ohio Aug. 2, 2006)). The court found that plaintiff's repeated reference to

9

"Toyota" – exemplified in plaintiff's insistence that "'Toyota' is 'omnipresent in the United States and Ohio'" – "intentionally blur[red] the line between TMC and TMS." *Id.* (internal citations omitted). The court held that TMS's contacts with Ohio were "irrelevant" to Ohio's jurisdiction over TMC, in part because TMC maintains its own workforce and corporate books, does not own TMS stock, and gives no instructions to TMS regarding distribution of vehicles. *Id.* On appeal, the Sixth Circuit agreed that "TMS and TMC are not alter egos," even after considering additional factors that might suggest an alter ego relationship, including having the same address and phone lines, using the same assets, completing the same jobs, and exerting control over another's daily affairs. 545 F.3d at 362-63.

This Court is convinced by the reasoning of these cases. In particular, the Court notes that like Ohio law, District of Columbia law evaluates alter ego liability by looking to "similarities between the two enterprises in their ownership, management, business purpose, operations, equipment, and customers." *Flynn v. R.C. Tile*, 353 F.3d 953, 958 (D.C. Cir. 2004) (citing *Mass. Carpenters Cent. Collection Agency v. Belmont Concrete Corp.*, 139 F.3d 304, 308 (1st Cir. 1998)). Therefore, this Court concludes that it lacks personal jurisdiction over TMC.

## II.     THRIFTY

Thrifty has moved to dismiss on the grounds of res judicata, collateral estoppel, *forum non conveniens*, and lack of personal jurisdiction. (Thrifty's Mem. at 2.) The Court "can immediately take up the question of *forum non conveniens* and need not first consider whether it has subject-matter or personal jurisdiction." *Kazenercom Too v. Turan Petroleum, Inc.*, 590 F. Supp. 2d 153, 157 (D.D.C. 2008) (citing *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 424-25 (2007)). Accordingly, the Court first considers *forum non*

*conveniens* and finds that transfer under 28 U.S.C. § 1404(a) is warranted to promote judicial economy and to avoid inconsistent judgments and significant inconvenience to parties and witnesses.

Congress has codified the doctrine of *forum non conveniens* at 28 U.S.C. § 1404(a), "provid[ing] for transfer, rather than dismissal, when a sister federal court is the more convenient place for trial of the action." *Sinochem*, 549 U.S. at 430. Although Thrifty's motion to dismiss for *forum non conveniens* does not seek transfer (Thrifty's Mot. at 1),[3] courts may transfer cases *sua sponte* under § 1404(a).[4] *See, e.g.*, *In re Scott*, 709 F.2d 717, 721 (D.C. Cir. 1983) (citing *Skil Corp. v. Millers Falls Co.*, 541 F.2d 554, 556 (6th Cir. 1976) (permitting *sua sponte* transfer where transfer would result in consolidation of plaintiff's claim with related claims in another venue)); *Galindo v. Gonzales*, 550 F. Supp. 2d 115, 116 (D.D.C. 2008); *Paley v. Estate of Ogus*, 20 F. Supp. 2d 83, 92-93 (D.D.C. 1998).

---

[3] Thrifty claims that the court's dismissal for *forum non conveniens* in *Estate of Dorothy Thomson I* operates as res judicata or collateral estoppel (Thrifty's Mem. at 4-6). The Court does not find this persuasive. Although Judge Urbina of this Court previously held in *Amore v. Accor, S.A.*, 484 F. Supp. 2d 124 (D.D.C. 2007), that *forum non conveniens* could operate as res judicata or collateral estoppel, *Amore* is distinguishable based on the availability of the proposed alternate forum. In *Amore*, the court held that the previous *forum non conveniens* dismissal of plaintiffs' identical action in *Reers v. Deutsche Bahn AG*, 320 F. Supp. 2d 140 (S.D.N.Y. 2004), operated as res judicata. Notably, the *Reers* court was relying on the fact that France was available as an alternate forum and defendant was amenable to suit there. *See* 320 F. Supp. 2d at 159. In contrast, here there is a substantial question as to whether South Africa is an available forum for suit against Thrifty. *See Estate of Madison Miller*, 2007 WL 4482589, at *4-*6; *Michael Miller*, 593 F. Supp. 2d at 1259.

[4] Courts may also transfer cases under 28 U.S.C. § 1406(a), which states, in relevant part, that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Therefore, even assuming *arguendo* that venue in the District of Columbia is improper, this Court could still transfer the plaintiff's claims against Thrifty, since its determination that the "interests of justice" warrant transfer under § 1404(a) would also support transfer under § 1406(a).

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." While § 1404(a) requires that the forum to which a case is transferred be one in which the case originally might have been brought, *Paley*, 20 F. Supp. 2d at 92 (citing *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960)), courts have broad discretion to "adjudicate motions to transfer according to individualized, case-by-case consideration of convenience and fairness." *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 50 (D.D.C. 2000) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

In exercising its discretion, the Court considers several private and public interest factors. *Onyeneho v. Allstate Ins. Co.*, 466 F. Supp. 2d 1, 3 (D.D.C. 2000) (citing *Reiffin*, 104 F.Supp.2d at 51-52). "Private interest factors include, but are not limited to: (1) plaintiffs' privilege of choosing the forum; (2) defendant's preferred forum; (3) location where the claim arose; (4) convenience of the parties; (5) convenience of witnesses, but only to the extent that witnesses may be unavailable for trial in one of the fora; and (6) ease of access to sources of proof. Public interest considerations include: (1) the transferee's familiarity with the governing law; (2) the relative congestion of the courts of the transferor and potential transferee; and (3) the local interest in deciding local controversies at home." *Id.* at 3 (citing *Airport Working Group of Orange County, Inc. v. U.S. Dep't of Def.*, 226 F. Supp. 2d 227, 229 (D.D.C. 2002)).

While plaintiff's choice of forum generally merits deference, *Great Socialist People's Libyan Arab Jamahiriya v. Miski*, 496 F. Supp. 2d 137, 144-45 (D.D.C. 2007), "the strong presumption against disturbing plaintiff['s] initial forum of choice . . . is weakened . . . when the forum is not plaintiff's home forum and most of the relevant events occurred elsewhere."

*Demery v. Montgomery County, MD*, 602 F. Supp. 2d 206, 210 (D.D.C. 2009)(quoting *Hunter v. Johanns*, 571 F. Supp. 2d 340, 344 (D.D.C. 2007)).

In *Estate of Madison Miller*, the Florida district court denied Thrifty's motion to dismiss for *forum non conveniens* and lack of personal jurisdiction, making clear that the instant suit against Thrifty could have been brought in the Middle District of Florida. *See* 2007 WL 4482589 at *11.[5] Therefore, plaintiff's case satisfies § 1404(a)'s first requirement, such that transfer depends only upon this Court's discretionary finding that the "convenience of the parties and witnesses" and the "interests of justice" warrant transfer. 28 U.S.C. § 1404(a). These factors weigh heavily in favor of transfer to the Middle District of Florida.

First, plaintiff has chosen a forum that is neither her home forum nor one in which any relevant events occurred. Plaintiff resides in Ohio and the vehicle rental and accident occurred in South Africa. Accordingly, plaintiff's choice of forum is entitled to little, if any, deference. *See Demery*, 602 F. Supp. 2d at 210 (quoting *Hunter*, 571 F. Supp. 2d at 344). Second, the costs to plaintiff of litigating in the District of Columbia are likely to be similar to, if not higher than, those of litigating in the Middle District of Florida, where her family members' and husband's claims are already scheduled for trial. (Pl.'s Opp'n to Thrifty's Mot. at 2.) Third, transfer to the Middle District of Florida will conserve judicial resources by avoiding duplicative litigation. The evidence and witnesses that are material to plaintiff's liability claims in this case will undoubtedly be the same as in *Estate of Madison Miller*. (Pl.'s Mot. to Stay the Proceedings, at 1-2.) Moreover, plaintiff's husband's case will also relate to plaintiff's injuries. The existence

---

[5] The Middle District of Florida similarly refused to dismiss Thrifty for *forum non conveniens* in *Michael Miller*. *See* 593 F. Supp. 2d at 1259.

of companion cases in other venues often warrants transfer for precisely these reasons. *See, e.g.*, *Islamic Republic of Iran v. Boeing, Inc.*, 477 F. Supp. 142, 144 (D.D.C. 1979) ("[L]itigation in this Court of liability issues closely similar to issues pending for over two years in another federal court would be a grossly inefficient use of judicial resources."); *Byerson v. Equifax*, 467 F. Supp. 2d 627 (E.D. Va. 2006) (noting that judicial economy and avoidance of inconsistent judgments are the most significant factors relevant to the interests of justice); *Columbia Pictures Indus. v. Fung*, 447 F. Supp. 2d 306 (S.D.N.Y. 2006) (quoting *Wyndham Assoc. v. Bintiff*, 398 F.2d 614, 619 (2nd Cir. 1968)) ("There is a strong policy favoring the litigation of related claims in the same tribunal . . . .").

Furthermore, the District of Columbia has *no* interest in this case and its citizens should not be burdened with jury service. The Middle District of Florida, on the other hand, has a significant interest in providing redress for injuries sustained in the accident, since three of the plaintiffs in *Estate of Madison Miller* are now Florida residents. *Estate of Madison Miller* includes four of the six passengers who were riding in the vehicle at the time of the accident, as well as plaintiff's husband. (Order of Consolidation, No. 07-1358 (M.D. Fla. Oct. 29, 2008).) The only passengers not in the Florida suit are plaintiff and her mother, whose estate has filed suit in the District of Maryland for reasons unknown to this Court.

The Court therefore concludes that the convenience of parties and witnesses and the interests of justice weigh heavily in favor of transferring plaintiff's claims against Thrifty to the Middle District of Florida.

## **CONCLUSION**

For the foregoing reasons, the Court will grant defendant TMC's motion to dismiss for lack of personal jurisdiction and will deny defendant's Thrifty's motion to dismiss. Pursuant to 28 U.S.C. § 1404(a), the Court transfers plaintiff's claims against Thrifty to the U.S. District Court for the Middle District of Florida on the grounds of *forum non conveniens*, to be consolidated with *Estate of Madison Miller*, No. 07-1358 (M.D. Fla. filed Aug. 24, 2007). A separate order accompanies this Memorandum Opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

DATE: June 2, 2009